UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADEMAR A. MARQUES, | ) Civil No. 09-cv-1985-L(RBB) |
| Plaintiff, | ) **ORDER GRANTING IN PART AND** |
| | ) **DENYING IN PART DEFENDANT'S** |
| v. | ) **MOTION TO DISMISS** |
| WELLS FARGO HOME MORTGAGE, | ) |
| INC. dba AMERICA'S SERVICING CO., | ) |
| Defendant. | ) |

In this mortgage foreclosure action, Defendant Wells Fargo Home Mortgage, Inc. dba America's Servicing Company filed a motion to dismiss or transfer venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or dismiss for failure to state a claim pursuant to Rule 12(b)(6). Plaintiff filed an opposition and Defendant replied. For reasons stated below, Defendant's motion to dismiss or transfer for improper venue is **DENIED** and its motion to dismiss for failure to state a claim is **GRANTED WITH LEAVE TO AMEND**.

Plaintiff alleges that he owns a residence located at 4431 Paola Way in San Diego. (Compl. at 2.) The Property is a single-family residence and Plaintiff's primary residence. (*Id*. at 4.) In September 2005 Plaintiff refinanced the mortgage on the Property. (*Id*. at 2, 3.) Defendant is the servicer on Plaintiff's current loan. (*See id*. at 3.) A notice of default was recorded on August 11, 2008, the Property was sold, and on December 8, 2008 a Trustee's Deed upon Sale was recorded. (*Id*. at 5 & Ex. 4.) The sale, however, was rescinded and Plaintiff

remained the trustor and assessed owner of the Property. (*Id*. at 5.) On or about April 13, 2009 Defendant entered into the Commitment to Purchase Financial Instrument and Servicer Participation Agreement for the Home Affordable Modification Program under the Emergency Economic Stabilization Act of 2008 ("Agreement") with Federal National Mortgage Association ("Fannie Mae") and agreed to perform certain loan modification and foreclosure prevention services for eligible loans. (*Id*. at 3-4 & Ex. 1 (Agreement).) On July 17, 2009 Plaintiff came into possession of a copy of an unrecorded Notice of Trustee's Sale with an August 6, 2009 sale date (*Id*. at 5 & Ex. 5), which appears to have prompted the filing of this action.

Plaintiff filed a complaint in San Diego County Superior Court alleging breach of the Agreement on the theory that he is a third-party beneficiary under California Civil Code Section 1559, that his loan was eligible for modification, Defendant refused to offer to modify it under the Agreement, but instead commenced foreclosure proceedings. (*See* Compl. at 3-5 & Agreement at 1.) Based on breach of contract, he also alleged that Defendant violated the Unfair Competition Law, Cal. Bus. & Prof Code § 17200 *et seq*. ("UCL"). He seeks damages and declaratory judgment that Defendant does not have the right to foreclose on the Property.

Defendant removed the action to this court based on federal question jurisdiction pursuant to 28 U.S.C. Section 1331 and diversity jurisdiction pursuant to 28 U.S.C. Section 1332, and then filed a motion to dismiss. Defendant claims that under the Agreement's forum selection clause venue is improper in this district and that the complaint fails to state a claim.

Defendant argues that pursuant to the forum selection clause, proper venue lies in the District of Columbia and that the case should either be dismissed of transferred for improper venue. (*See* Agreement ¶ 11(a).) A motion to dismiss based on a forum selection clause is construed as a Rule 12(b)(3) motion to dismiss for improper venue. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). On a Rule 12(b)(3) motion, the allegations in the complaint need not be accepted as true and the court may consider facts outside the complaint. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). The court "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in [his] favor . . .." *Id*. at 1138.

Federal law governs the enforceability of the forum selection clause. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991) (federal question cases); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) (diversity cases). A forum selection clause may restrict a third-party beneficiary to the selected forum. *TAAG Linhas Aereas de Angola v. Transam. Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990). "[F]orum selection clauses are presumptively valid" and "should be honored absent some compelling and countervailing reason." *Murphy*, 362 F.3d at 1140, quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) (internal quotation marks omitted). Three reasons make enforcement of a forum selection clause unreasonable:

> (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought.

*Id.* at 1140 (internal citation and quotation marks omitted).

Plaintiff argues that enforcing the clause would be unreasonable because it would effectively deprive him of his day in court. The court agrees. That Plaintiff is financially distressed is obvious from the nature of this action and Defendant does not dispute it. Where a party's financial circumstance would effectively preclude him from a day in court, enforcing the forum selection clause would be unreasonable. *Murphy*, 362 F.3d at 1142. Defendant's motion to dismiss or transfer for improper venue is therefore **DENIED**.

Defendant next maintains that the complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, brackets and citations omitted).  In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

Plaintiff alleged that Defendant breached the Agreement because his loan qualified for loan modification and other conditions for loan modification under the Agreement were met, but Defendant refused to modify the loan and instead commenced foreclosure proceedings.  (Compl. at 3-5.)  Plaintiff contends that he has a right to enforce the Agreement as a third-party beneficiary.  (Compl. at 5-6.)  Defendant argues that Plaintiff is not a third-party beneficiary.

Federal law controls the interpretation of a contract entered into pursuant to federal law and to which the United States is a party. *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1243 (9th Cir. 2009), *pet. for cert. filed*, 78 U.S.L.W. 3644 (U.S. Apr. 21, 2010) (No. 09-1273). The Agreement was entered into between Defendant and Fannie Mae in its capacity as a financial agent of the United States.  (*See* Agreement at 1.)  Furthermore, the Agreement provides that it "shall be governed by and construed under Federal law and not the law of any state or locality, without reference to or application of the conflicts of law principles." (Agreement ¶11(A).)  Whether Plaintiff is a third-party beneficiary is therefore determined by federal law.

Under federal common law only an intended beneficiary may enforce a contract as a third-party beneficiary:

> **[B]efore a third party can recover under a contract, it must show that the contract was made for its direct benefit - that it is an *intended beneficiary* of the contract.** A promisor owes a duty of performance to any intended beneficiary of the promise, and the intended beneficiary may enforce the duty by suing as a third party beneficiary of the contract, whereas an incidental beneficiary acquires no right against the promisor.

*Astra*, 588 F.3d at 1244 (internal quotation marks, brackets and citations omitted, emphases in *Astra*).

> To qualify as an intended beneficiary, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. Although intended beneficiaries need not be specifically or individually identified in the contract, they still must fall within a class clearly intended by the parties to benefit from the contract.

*Id*.

It is particularly difficult for parties to government contracts to demonstrate third-party beneficiary status. *Id*. "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries rather than intended ones, and so may not enforce the contract *absent a clear intent to the contrary*." *Id*. (internal quotation marks and citations omitted, emphasis in original).

> This "clear intent" hurdle is not satisfied by a contract's recitation of interested constituencies, vague, hortatory pronouncements, statements of purpose, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind.

*Id*. (internal quotation marks, brackets and citations omitted).

To determine whether a party is an intended beneficiary of a government contract, the court must examine "the precise language of the contract for a clear intent to rebut the presumption that the third parties are merely incidental beneficiaries." *Astra*, 588 F.3d at 1244 (internal quotation marks, brackets and citations omitted). Specifically, the court examines the contract as a whole and "weigh[s] the circumstances of the transaction." *Id*. at 1245 (internal quotation marks and citations omitted). "[W]hen a contract is mandated by a federal statute, [this] includes the governing statute and its purpose." *Id*. (internal quotation marks and citations omitted).

/ / / / /

The United States Department of the Treasury ("Treasury") established the Home Affordable Modification Program ("Program") pursuant to the Emergency Economic Stabilization Act of 2008 ("Act"). (Agreement at 1.) The Act directed the Treasury to use its authority and facilities in a manner consistent with protecting home values and other assets of individuals, preserving home ownership, maximizing returns to the taxpayers, and providing public accountability. *Id*. The Program was established pursuant to 12 U.S.C. Sections 5211 and 5219. (Agreement at 1.) It was a part of the Troubled Asset Relief Program, which gave the Treasury authority to purchase certain troubled assets, *id*. § 5211, and, to the extent the Treasury acquired any mortgages, the Act directed the Treasury to implement a plan to maximize assistance to homeowners and encourage mortgage servicers to take advantage of government programs to minimize foreclosures, *id*. § 5219. In furtherance of these goals, the Treasury, through Fannie Mae, entered into agreements with loan servicers. Defendant entered into such an agreement.

"In determining the central question of the contracting parties' intent, [the court] looks at the contract's text and purpose." *Astra*, 588 F.3d at 1245 (internal quotation marks and citation omitted). The court "interpret[s] every part of a written contract with reference to the whole and give[s] terms their ordinary meaning unless a contrary intent appears. When possible, [the court] ascertain[s] the intent of the parties from the contract itself." *Id*. at 1244 (citations omitted). If the contract expresses a clear intent to directly benefit a third party, the third party is an intended beneficiary with the right to enforce the contract, even if the contract does not expressly grant the third party the right to sue. *Id*. at 1244-45.

That the Agreement does not expressly state that it was entered into for the borrowers' benefit (*see* Agreement ¶ 11(E)) is not fatal to Plaintiff's claim because the analysis of intended beneficiary status is not conditioned on such "formalistic recitals." *Astra*, 588 F.3d at 1246 n.8. Reading the Agreement in its entirety evinces a clear intent to directly benefit eligible borrowers.

The Agreement expressly provides, "Servicer *shall* perform the loan modification and other foreclosure prevention services (collectively, the '<u>Services</u>') described in" other documentation, including Program Guidelines. (Agreement ¶1(A) (italicized emphasis added.)

Furthermore,

> Servicer *shall* perform the Services for *all* mortgage loans it services, whether it services such mortgage loans for its own account or for the account of another party, including any holders of mortgage-backed securities (each such other party, an "<u>Investor</u>").  Servicer *shall* use reasonable efforts to remove all prohibitions or impediments to its authority, and use reasonable efforts to obtain all third party consensus and waivers that are required, by contract or law, in order to effectuate any modification of a mortgage loan under the Program.

(*Id*. ¶2(A) (italicized emphases added); *see also id*. Ex. A ("Financial Instrument") ¶5(b).)[1]  In exchange for Defendant's modification of eligible loans, the Agreement requires Fannie Mae to pay Defendant, investors and eligible borrowers certain sums up to a cap of approximately $2.8 billion dollars in aggregate for all of Defendant's loan modifications under the Agreement.  (*Id*. ¶4(B)&(D).)  Defendant has an opportunity to opt out of the Agreement if the Treasury changes the Program terms.  (*Id*. ¶10(C).)

In describing the Program, the Treasury stated that the Program, comprising of loan modification and refinance services, "*will offer assistance to as many as 7 to 9 million homeowners*, making their mortgages more affordable and helping to prevent the destructive impact of foreclosures on families, communities and the national economy." (Compl. Ex. 3 (Summary of Guidelines ("Summary")) (emphasis in original).)   According to the Treasury, the loan modification part of the Program "will help up to 3 to 4 million at-risk homeowners avoid foreclosure by reducing monthly mortgage payments." (*Id*.)

The Program, however, goes beyond the hortatory pronouncements by providing that the participating servicers are "*required* to service *all* eligible loans under the rules of the program unless explicitly prohibited by contract." (*Id*. (emphases added).)

> Participating servicers are *required* to consider all eligible loans under the program guidelines unless precluded by the rules of the applicable [pooling and servicing agreements] and/or other investor servicing agreements.  Participating servicers are *required* to use reasonable efforts to remove any prohibitions and obtain waivers or approvals from all necessary parties.

---

[1] Excepted from Defendant's obligation to modify are the loans for which Defendant is unable to obtain the necessary consents and waivers or where the modification is prohibited by a prior contract.  (*Id*. ¶2(B).)  Plaintiff alleged that the current investor on his loan allows loan modification. (Compl. at 4.)

(Compl. Ex. 2 (Home Affordable Modification Program Guidelines ("Guidelines"))[2] at 2 (emphases added).) Furthermore, "*[e]very* potentially eligible borrower who calls or writes in to their servicer in reference to a modification *must* be screened for hardship." (*Id*. at 5 (emphasis added).) When a loan is at risk of imminent default or at least 60 days delinquent, the servicers are *required* to use a particular net present value test on *each* such loan. (Summary (emphasis added); *see also* Guidelines at 5-6.) If the test is positive, "the servicer *must* modify absent fraud or a contract prohibition." (Summary (emphasis added); *see also* Guidelines at 6.) The Program requires suspension of foreclosure proceedings during a borrower's trial modification period. (Guidelines at 3.)

Based on the foregoing, the Agreement unambiguously directs Defendant to modify loans, identifies criteria to determine which loans are eligible for modification, and specifies how to modify them. (Guidelines at 2-10, 16-17.) Other provisions explain in detail the compensation for Defendant, investors and borrowers under the Program, information keeping requirements, and other particulars. (Guidelines at 1-17; Financial Instrument ¶3 (information keeping and reporting requirements)).) Upon a fair reading of the Agreement in its entirety and in the context of its enabling legislation, it is difficult to discern any substantial purpose other than to provide loan modification services to eligible borrowers. *See Astra*, 588 F.3d at 1246. Defendant does not offer any other purpose for the Agreement. The Agreement on its face expresses a clear intent to directly benefit the eligible borrowers.

Relying on *United States v. FMC Corporation*, Defendant contends that Plaintiff cannot be an intended third-party beneficiary. 531 F.3d 813 (9th Cir. 2008). The plaintiff in *FMC*, an Indian tribe, was held not to be an intended third-party beneficiary of a consent decree between the United States government and FMC. *Id*. Defendant points to the fact that the tribe was involved in the consent decree negotiations, was referred to several times in the consent decree, and was given certain rights in the decree, but all of this was insufficient to make it an intended

---

[2] Program Guidelines, the Financial Instrument and other documentation provide specific terms for Defendant's performance under the Agreement. (Agreement ¶ 1(A))

beneficiary. (Def.'s Mem. of P.&A. at 10-11; Reply at 6 n.2.) The primary reason for finding that the tribe was not an intended beneficiary was a provision in the consent decree expressly stating that it was not intended either to create any rights or grant any cause of action to any person not a party to the consent decree. *FMC*, 531 F.3d at 821. *FMC* is distinguishable because the Agreement between Defendant and Fannie Mae does not contain this or an equivalent provision.

Next, Defendant argues that the contracting parties could not have intended to give third parties the right to sue because the Agreement gives the right to determine compliance to Federal Home Loan Mortgage Corporation ("Freddie Mac") and the right to enforcement in the event of default to Fannie Mae. The court disagrees.

The Agreement's remedy and default provisions, including Freddie Mac's role in overseeing Defendant's compliance, are designed to ensure Defendant's accountability and protect the Treasury from overpaying for loans which were modified, paying for modifying ineligible loans, or being otherwise overcharged. (*See* Agreement ¶4(A)(d).) They do not address disputes between Defendant and borrowers which arise when Defendant refuses to modify a loan, as is the case here, because Fannie Mae's obligation to pay Defendant under the Agreement arises only when Defendant modifies a loan under the Agreement. It does not arise for the loans which Defendant does not modify. (*See id*. ¶¶ 3 & 4.) The Agreement's default and remedy provisions therefore do not come to bear when Defendant does not modify a loan.

Consistently, the focus on protecting the public funds from misuse under the Program is reflected in what the Agreement defines as Events of Default (*id*. ¶6(A)), and the remedies at Fannie Mae's disposal if Defendant defaults: withholding of funds; choosing other means to channel funds to the investors' and borrowers' accounts; reducing the amount payable Defendant or seeking repayment of previously paid amounts; requiring Defendant to submit to additional Program administrator oversight, "including, but not limited to, additional compliance controls and quality control reviews;" termination of the Agreement; and imposing information and reporting requirements regarding Defendant's financial condition and ability to perform under the Agreement (*id*. ¶6(B); *see also id*. ¶4(J)&(K)). These provisions are designed to ensure

Defendant's accountability and protect public funds. They are relevant only when Defendant has modified a loan and Fannie Mae's obligation to make payments arises. They do not come to bear when Defendant has not modified an eligible loan, as Plaintiff alleges. Defendant's argument that the default and remedies provisions preclude Plaintiff from enforcing his rights under the Agreement are therefore rejected.

Last, Defendant contends that Plaintiff cannot be an intended third-party beneficiary because enforcement by all the eligible borrowers would be "unwieldy." (Reply at 3 n.1.) Defendant points to the Treasury's description of the Program stating that it "will offer assistance to as many as 7 to 9 million homeowners." (Summary (emphasis omitted).) Although "[the breadth and indefiniteness of a class of beneficiaries is entitled to some weight in negating the inference of intended beneficiary status[, ] numbers alone are not determinative." *Astra*, 588 F.3d at 1248 (citation omitted). Unlike the total potential pool of Program beneficiaries referenced by the Treasury, the class of persons who could potentially enforce the Agreement is narrow and well-defined. It is limited to eligible borrowers whose loans are serviced by Defendant. It is therefore "not at all akin to members of the public at large." *Id*. Defendant's argument that the number of potential beneficiaries negates the beneficiary status is rejected.

Based on the foregoing, Plaintiff may be able to state a claim against Defendant as an intended beneficiary of the Agreement. Under the unambiguous terms of the Agreement, Plaintiff at the very least had a right to have his loan considered for modification. He alleged that he is eligible under the Guidelines and that the current investor allows modification of his loan. (Compl. at 4.) He further alleged that Defendant had not indicated that his loan could not be modified, but refused to offer to modify it and instituted foreclosure proceedings. (*Id*. at 4-5.) However, because Plaintiff did not allege whether he contacted Defendant in reference to the modification and because it is unclear from the allegations whether Defendant considered Plaintiff's loan for modification at all, Plaintiff has alleged insufficient facts to state a claim for breach of the Agreement. Defendant's motion to dismiss is therefore **GRANTED**.

/ / / / /

/ / / / /

Plaintiff's claim for injunctive relief and restitution under the UCL and for declaratory relief are entirely premised on the breach of contract claim.  Defendant's motion to dismiss these remaining claims is therefore **GRANTED** for the same reasons.

Plaintiff has not requested leave to amend the complaint if the motion to dismiss is granted.  Nevertheless, the court must consider whether a motion to dismiss should be granted with leave to amend.  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 2004).  Rule 15 advises the court that leave to amend shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a).  "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).  Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment.  *Id*. at 1052.  Because it appears that the complaint could be amended by alleging additional facts, Plaintiff is granted **LEAVE TO AMEND**.

Based in on the foregoing, it is hereby **ORDERED** as follows:

1. Defendant's motion to dismiss or transfer based on improper venue is **DENIED**.

2. Defendant's motion to dismiss for failure to state a claim is **GRANTED WITH LEAVE TO AMEND**.

3. If Plaintiff chooses to file an amended complaint, he must do so no later than **August 31, 2010**.  Defendant shall respond to the amended complaint, if any, within the time set forth in Federal Rule of Civil Procedure 15(a)(3).

**IT IS SO ORDERED.**


DATED: August 12, 2010

M. James Lorenz
United States District Court Judge

COPY TO:

HON. RUBEN B. BROOKS
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

09cv1985