SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
ERIK S. BLISS, Cal. Bar No. 184954
ebliss@sheppardmullin.com
ALEJANDRO E. MORENO, Cal. Bar No. 256802
amoreno@sheppardmullin.com
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone:   619-338-6500
Facsimile:   619-234-3815

Attorneys for Defendant
WELLS FARGO BANK, N.A., erroneously sued
as WELLS FARGO HOME MORTGAGE, INC.
dba AMERICA'S SERVICING COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADEMAR A. MARQUES, an individual,<br><br>          Plaintiff,<br><br>   v.<br><br>WELLS FARGO HOME MORTGAGE, INC., dba AMERICA'S SERVICING COMPANY, a corporation; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No. 3:09-cv-01985-L-RBB<br><br>**WELLS FARGO BANK, N.A.'S COUNTERCLAIM FOR SLANDER OF TITLE AND ABUSE OF PROCESS**<br><br>Judge:   Hon. M. James Lorenz<br>Ctrm:   Dept. 14 |
| WELLS FARGO BANK, N.A., a national banking association,<br><br>          Counter-Claimant,<br><br>   v.<br><br>ADEMAR A. MARQUES, an individual, and DOES 1-10, inclusive,<br><br>          Counter-Defendants. | |

Counter-Claimant Wells Fargo Bank, N.A. ("Wells Fargo"), erroneously sued as Wells Fargo Home Mortgage, Inc. dba America's Servicing Company, counterclaims against Counter-Defendant Ademar Marques ("Marques") and Does 1-10 inclusive (Marques and Does 1-10 will collectively be referred to as "Counter-Defendants"), and alleges as follows:

## BASIS FOR THE ACTION

1. Wells Fargo's counterclaims seek remedy for Counter-Defendants' wrongful recording of a *lis pendens* against real property located at 4431 Paola Way, San Diego, CA 92117 ("Subject Property") without basis in law or fact.

2. Counter-Defendants' initial recording of a *lis pendens* against the Subject Property was unquestionably **void** under California Code of Civil Procedure ("C.C.P.") § 405.23 because Counter-Defendants failed to comply with the service, filing, and recording requirements set forth in C.C.P. § 405.22. Counter-Defendants have implicitly admitted as much by withdrawing their initial *lis pendens*.

3. Counter-Defendants have now renewed their efforts to cloud title to the Subject Property by recording a second *lis pendens* against the Subject Property. Counter-Defendants recorded this second *lis pendens* despite this Court's November 10, 2010 Order [ECF No. 29] ("November 10 Order") denying Marques's request for a preliminary injunction and vacating the temporary restraining order preventing Marques's eviction from the Subject Property. The November 10 Order held that **none** of Marques's claims against Wells Fargo could affect title or possession of the Subject Property. Accordingly, under California Civil Code § 47(b)(4), Counter-Defendants' recording of the *lis pendens* is not protected by the litigation privilege and Wells Fargo can sue to recover the damages attributed to Counter-Defendants' wrongfully recorded *lis pendens*.

4. Counter-Defendants' baseless recording of the *lis pendens* against the Subject Property has damaged Wells Fargo because it prevented the sale of the Subject Property to a third-party purchaser for $365,000. The *lis pendens* has also caused Wells Fargo to continue accruing significant carrying costs while unable to market and sell the Subject Property.

5. For these reasons, Wells Fargo brings counter-claims for: slander of title under California common law (First Counterclaim) and abuse of process under California common law (Second Counterclaim).

## THE PARTIES

6. Counter-Claimant Wells Fargo is a national banking association having its main office located at 101 N. Phillips Avenue Sioux Falls, South Dakota 57104. Wells Fargo services the Subject Property on behalf of the owner, non-party U.S. Bank, N.A. ("U.S. Bank"). Wells Fargo's duties include maintaining the Subject Property, paying the Subject Property's carrying costs (which include, among other things, taxes and insurance), preparing it for sale, and marketing and selling the Subject Property on behalf of U.S Bank.

7. Upon information and belief, Counter-Defendant Marques is an individual who resides in San Diego, California.

8. Wells Fargo is unaware at this time of the true names and capacities of counter-defendants sued herein as Does 1 through 10, inclusive, and therefore sues these counter-defendants by these fictitious names. Wells Fargo will seek leave of Court to amend this Counterclaim to allege their true names and capacities when the same have been ascertained or at the time of trial.

9.  Wells Fargo is informed and believes and upon that basis alleges that at all times herein mentioned, each of the Counter-Defendants was the agent, servant, or employee of each of the other Counter-Defendants, and in doing the things hereinafter alleged, was acting in the course and scope of such agency, service and employment and with the permission and consent of his, her, or its co-Counter-Defendants.

## JURISDICTION AND VENUE

10. This Court has personal jurisdiction over Counter-Defendants because, upon information and belief: (i) Marques resides in California and has consented to personal jurisdiction by filing his Complaint in this district; and (ii) Counter-Defendants reside in California, do business and/or actively solicit business in California, have continuous and ongoing business contacts with residents of California, have intentionally engaged in acts targeted at California that have caused harm within California, and/or they have purposely availed themselves of the privilege of conducting business in California.

11. The Court has supplemental jurisdiction over Wells Fargo's counterclaims under 28 U.S.C. § 1367 because the Court has original jurisdiction over Marques's claims pursuant to 28 U.S.C. § 1332 (diversity).

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a), (b), and (c) in that, upon information and belief, Counter-Defendants reside and/or regularly conduct business in this district, and because Marques has consented to venue by filing his Complaint in this district.

## FACTUAL BACKGROUND

13. In or about September 2005, Marques took out a $488,166.42 loan with non-party Centex Home Equity Co., LLC, to refinance the Subject Property ("Loan"). The Loan was secured by a Deed of Trust on the Subject Property.

14. Wells Fargo subsequently became the servicer on Marques's Loan.

15. Beginning on or about March 1, 2008, Marques became delinquent on the Loan and, after informing Marques of his substantial defaults, Wells Fargo began the process of foreclosing on the Subject Property.

16. On July 27, 2009, Marques filed a Complaint against Wells Fargo in San Diego Superior Court. Wells Fargo removed the action to this Court on September 9, 2009.

17. The lawsuit alleged that Marques was a third-party beneficiary of the agreement between Wells Fargo and Fannie Mae to institute the Home Affordable Modification Program ("HAMP"). Marques also brought claims for declaratory relief and relief under the California Business and Professions Code § 17200, *et seq.* In connection with these claims, Marques sought damages, declaratory relief, and stated that he would seek injunctive relief to cancel or rescind the foreclosure sale of the Subject Property.

18. On September 16, 2009, Wells Fargo filed a Motion to Dismiss Plaintiff's Complaint Or Alternatively Dismiss Or Transfer For Improper Venue ("Motion to Dismiss the Complaint") arguing, among other things, that Marques's Complaint failed to state a claim upon which relief could be granted.

19. Due to Marques's longstanding inability to cure the defaulted amount on the Loan, the Subject Property was sold at the Trustee's Sale to non-party U.S. Bank for $386,000. On March 30, 2010, the Trustee recorded its Deed Upon Sale showing the transfer of the Subject Property's title to U.S. Bank.

20. On August 12, 2010, the Court granted Wells Fargo's Motion to Dismiss and gave Marques leave to amend his Complaint.

21. On August 30, 2010, Marques filed a First Amended Complaint ("FAC") against Wells Fargo alleging the exact same causes of action that were dismissed when the Court ruled on the Motion to Dismiss the Complaint.

22. On October 29, 2010, Wells Fargo again filed a Motion to Dismiss the FAC ("Motion to Dismiss the FAC") arguing that the FAC failed to state a claim upon which relief could be granted.

23. On May 6, 2010, U.S. Bank initiated an unlawful detainer action against Marques titled *U.S. Bank N.A. v. Marques,* filed in San Diego Superior Court on May 6, 2010, Case No. 37-2010-00044202-CL-UD-CTL.

24. On August 5, 2010, Marques stipulated to a judgment in the unlawful detainer action in favor of U.S. Bank allowing him to remain in possession of the Subject Property until October 4, 2010. Later, U.S. Bank granted Marques a one-month extension permitting him to remain on the Subject Property until November 4, 2010.

25. On October 29, 2010, Marques filed an *ex parte* application for a Temporary Restraining Order ("TRO") to prevent U.S. Bank from enforcing a stipulated judgment in the previous unlawful detainer action where Marques agreed to vacate the

1 | Subject Property by November 4, 2010.  On November 1, 2010, the Court granted
2 | Marques's TRO application.

4 |     26.    After briefing by the parties, the Court issued the November 10 Order
5 | vacating Marques's TRO and denying the motion for a preliminary injunction.

7 |     27.    The November 10 Order established that none of the FAC's claims,
8 | which are directed solely *against* Wells Fargo, could possibly affect title or possession to
9 | the Subject Property because title and possession of the Subject Property have passed to
10 | non-party U.S. Bank.  Specifically, the Court found that:

> **[ECF No. 29 p. 7]**: [t]he only parties to the [HAMP] Agreement are Fannie Mae and Defendant. But in his Application Plaintiff is not requesting a remedy for breach of contract, such as, for example, to enjoin Defendant's foreclosure pursuant to the Agreement. *He is seeking to enjoin an eviction after the Property had already been foreclosed and sold to U.S. Bank. U.S. Bank is not a party to the Agreement with Fannie Mae.* (emphasis added).
>
> ****
>
> **[ECF No. 29 pp. 7-8]**: [Marques's] request for a preliminary injunction is denied because … after the foreclosure sale, *any injunction against [Wells Fargo] would be moot.* Plaintiff is requesting to enjoin his eviction. It is U.S. Bank and not Defendant who is evicting him from the Property … *U.S. Bank is the current owner of the Property and the only plaintiff in the unlawful detainer action … The stipulated judgment was issued for its benefit only …* The Writ of Possession of Real Property names only U.S. Bank as the judgment creditor with the right of possession … Accordingly, to avoid eviction, any injunctive relief would have to be binding on U.S. Bank. (emphasis added).

28. The November 10 Order established the obvious: irrespective of the eventual outcome of Marques's claims against Wells Fargo, none of those claims could affect non-party U.S. Bank's title to and possession of the property.

29. Despite the clear implications of the November 10 Order, Counter-Defendants recorded a *lis pendens* against the Subject Property ("First *Lis Pendens*") on December 9, 2010.

30. On information and belief, Counter-Defendants recorded the First *Lis Pendens* in an improper attempt to gain leverage over Wells Fargo in the pending lawsuit between the parties.

31. Counter-Defendants **did not** serve Wells Fargo prior to recording the First *Lis Pendens*; **did not** file their First *Lis Pendens* with this Court immediately after recording it against the Subject Property; and **did not** record a certificate of service with the recorded First *Lis Pendens*. Accordingly, the First *Lis Pendens* was unambiguously ***void*** under C.C.P. § 405.23.

32. On January 1, 2011, Wells Fargo received an offer from a third party to purchase the Subject Property for $350,000. Wells Fargo countered the offer and asked for $365,000. The third party accepted Wells Fargo's counter offer on January 10, 2011.

33. On January 10, 2011, over a month after Counter-Defendants recorded the First *Lis Pendens*, the Subject Property's listing agent notified Wells Fargo that a *lis pendens* had been recorded against the Subject Property. Before January 10, 2011, Wells Fargo was unaware that a *lis pendens* had been recorded against the Subject Property. As a direct result of the wrongfully recorded First *Lis Pendens*, the Subject Property fell out of escrow and the transaction did not close.

34.     Wells Fargo's counsel became aware of the First *Lis Pendens* on March 22, 2011. From that date onward, Wells Fargo's counsel has tried, unsuccessfully, to convince Marques's counsel to withdraw the First *Lis Pendens* encumbering the Subject Property.

35.     On repeated occasion, Wells Fargo's counsel notified Marques's counsel: (i) that the First *Lis Pendens* was void pursuant to C.C.P. § 405.23; and (ii) that the Court's November 10 Order conclusively establishes that Marques's lawsuit cannot contain "real property" claims to support a *lis pendens* against the Subject Property.

36.     Despite Wells Fargo's counsel's repeated attempts, Counter-Defendants refused to voluntarily withdraw the First *Lis Pendens* until nearly **seven months** after it was wrongfully recorded without notice.

37.     Faced with mounting costs and the inability to market the Subject Property, Wells Fargo filed its Motion to Expunge *Lis Pendens* Or, In The Alternative, To Require Plaintiff To Post A Bond ("Motion to Expunge") on May 23, 2011. The hearing date for Wells Fargo's Motion to Expunge is August 22, 2011.

38.     On May 31, 2011, Marques's counsel tacitly admitted the improper nature of the First *Lis Pendens*. Wells Fargo's counsel received an email from Marques's counsel stating, among other things, that, "***We will address the procedural issues by withdrawing the Lis Pendens***, but will immediately file a renewed Lis Pendens." (emphasis added).

39.     On June 1, 2011, Counter-Defendants withdrew the First *Lis Pendens* and then immediately recorded a *lis pendens* ("Renewed *Lis Pendens*") against the Subject Property.

40.    Generally, the litigation privilege prevents parties from filing a lawsuit in connection with statements made (or papers filed) in the course of litigation.

41.    The California Legislature, however, has recognized that a wrongfully recorded *lis pendens* can have drastic and harmful effects on the marketability of real property. For this reason, the California Legislature enacted an exception to the litigation privilege with respect to wrongfully recorded *lis pendens*.

42.    California Civil Code § 47(b)(4) states that:

> "In any judicial proceeding … A recorded lis pendens is not a privileged publication **unless it identifies an action previously filed with a court of competent jurisdiction which affects the title or right of possession of real property, as authorized or required by law**." (emphasis added).

43.    According to the terms of California Civil Code § 47(b)(4), Counter-Defendants' initial recording of the First *Lis Pendens* was not protected by the litigation privilege because it was void and did not comply with the requirements of C.C.P. § 405.22.

44.    Additionally, both the First *Lis Pendens* and the Renewed *Lis Pendens* are not protected by the litigation privilege because Marques's claims against Wells Fargo *cannot* affect non-party U.S. Bank's title to and possession of the Subject Property.

45.    The facially improper First *Lis Pendens* has already interfered with one potential sale of the Subject Property. Counter-Defendants' unwarranted recordation of the First *Lis Pendens* prevented Wells Fargo from collecting $365,000 in proceeds, on behalf of U.S. Bank, for the sale of the Subject Property.

46.    Other potential sales have likely been defeated as well. Since December 9, 2010, the presence of a *lis pendens* on the Subject Property has stymied

-9-

efforts to market the Subject Property. At the same time, the national real estate market continues to weaken, further eroding the potential proceeds that will be obtained from the eventual sale of the Subject Property.

47. Moreover, on average, Wells Fargo accrues approximately $250 in carrying costs per day for each REO property it services. The wrongfully recorded First *Lis Pendens* and Renewed *Lis Pendens* have forced Wells Fargo to unnecessarily pay these costs on the Subject Property since at least January 10, 2011.

48. Counter-Defendants' wrongful recording of the First *Lis Pendens* and Renewed *Lis Pendens* have also caused Wells Fargo to incur thousands of dollars in legal fees and costs seeking to expunge the *lis pendens* recorded against the Subject Property.

49. Accordingly, Counter-Defendants should be ordered to compensate Wells Fargo for the damages caused by their baseless recording of the First *Lis Pendens* and Renewed *Lis Pendens*.

## I. FIRST COUNTERCLAIM

### (Slander of Title)

50. Wells Fargo repeats, realleges, and incorporates herein by reference the preceding Paragraphs numbers 1-49.

51. Counter-Defendants' recording of the First *Lis Pendens* and Renewed *Lis Pendens* falsely disparaged U.S. Bank's title to the Subject Property and completely stalled Wells Fargo's efforts to market the Subject Property on U.S. Bank's behalf.

52. Marques's claim that his lawsuit against Wells Fargo grants him a real property interest in the Subject Property is false and not supported by ***any*** evidence.

53. Counter-Defendants' recording of the First *Lis Pendens* was not privileged because it was facially void and did not comply with the notice, filing, and recording requirements of C.C.P. § 405.22.

54. Counter-Defendants' recording of the First *Lis Pendens* and the Renewed *Lis Pendens* was not privileged because there is no evidence that Marques's FAC includes any "real property" claims to support the recording of a *lis pendens* against the Subject Property.

55. The unjustified presence of the First *Lis Pendens* prevented the sale of the Subject Property to a third-party for $365,000. Moreover, the First *Lis Pendens* and the Renewed *Lis Pendens* have caused Wells Fargo to accrue significant daily carrying costs for the Subject Property, which otherwise would have been sold.

56. Wells Fargo seeks damages according to proof and reserves its rights to seek equitable remedies to enjoin Counter-Defendants from further slandering title to the Subject Property.

## II. SECOND COUNTERCLAIM
### (Abuse of Process)

57. Wells Fargo repeats, realleges, and incorporates herein by reference the Paragraphs numbers 1-49 alleged herein.

58. On information and belief, Counter-Defendants had ulterior motives for recording the First *Lis Pendens* and Renewed *Lis Pendens* against the Subject Property. Counter-Defendants recorded those encumbrances as part of a tactical gambit to gain leverage over Wells Fargo in the pending litigation between the parties.

59. On information and belief, Counter-Defendants recorded the First *Lis Pendens* in a clandestine manner to avoid detection as long as possible.

60. Counter-Defendants knowingly failed to comply with the notice, filing, and recording requirements of C.C.P. § 405.22.

61. Counter-Defendants succeeded in keeping the First *Lis Pendens* secret until January 10, 2011, when Wells Fargo independently became aware of the presence of a *lis pendens* on the Subject Property while in the process of selling the Subject Property.

62. Despite being repeatedly warned that the First *Lis Pendens* was facially improper and void, Counter-Defendants willfully refused to withdraw the First *Lis Pendens* until June 1, 2011 – the same day they recorded the Renewed *Lis Pendens*.

63. Counter-Defendants recorded the First *Lis Pendens* and Renewed *Lis Pendens* despite this Court's November 10 Order, which found that Marques has no "real property" claims against Wells Fargo.

64. Wells Fargo seeks damages according to proof and reserves its rights to seek equitable remedies to enjoin Counter-Defendants from further abusing the judicial process during the course of the parties' litigation.

# PRAYER FOR RELIEF

WHEREFORE, Counterclaimant Wells Fargo prays for judgment against Counter-Defendants as follows:

1. That Counter-Defendants be held liable for slander of title and abuse of process, as alleged herein.

2. For compensatory damages according to proof based on Counter-Defendants' slander of title and abuse of process.

3. That judgment be entered against Counter-Defendants for Wells Fargo's actual damages as a result of Counter-Defendants' unlawful conduct alleged herein.

4. That Counter-Defendants, and their officers, employees, agents, servants, attorneys, and representatives, and all other persons, firms, or corporations in active concert or participation with them, be preliminarily and thereafter permanently enjoined and restrained from:

    (a) causing a *lis pendens* (or any other encumbrance) to be recorded against the Subject Property;

    (b) slandering U.S. Bank's title to the Subject property;

    (c) using the judicial process to cloud title to the Subject Property; and

          (d)    interfering with Wells Fargo's efforts to market and sell the Subject Property pursuant to Wells Fargo's agreement with U.S. Bank.

5. That Wells Fargo recover its reasonable attorneys' fees and costs associated with bringing this Counterclaim.

6. That Wells Fargo be awarded punitive and exemplary damages pursuant to California common law.

7. That Wells Fargo be granted pre-judgment and post-judgment interest on the damages caused by Counter-Defendants.

8. That Wells Fargo be granted such other and further relief as the Court deems just and proper.

Dated: June 6, 2011

          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

          By    /s Alejandro E. Moreno
                    ERIK S. BLISS
                    ALEJANDRO E. MORENO

          Attorneys for Defendant
          WELLS FARGO BANK, N.A., sued herein as
          WELLS FARGO HOME MORTGAGE, INC.
          Email: amoreno@sheppardmullin.com